UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES | CRIMINAL ACTION |
| VERSUS | NO. 23-176 |
| ANTOINE CLARK ET AL. | SECTION R (3) |

# ORDER AND REASONS

Before the Court is the Government's memorandum seeking restitution from defendants Adonte Turner ("Adonte") and Tiffany Turner ("Tiffany").[1] In response, defendants oppose the amount of restitution the Government seeks.[2] For the following reasons, the Court orders restitution in the amount of $176,422.65 to be paid jointly and severally by Adonte and Tiffany. The Court also orders the Financial Litigation Unit of the United States Attorney's Office for the Eastern District of Louisiana to investigate and make a recommendation on the defendants' ability to pay for the purpose of scheduling their payments.

## I. BACKGROUND

Beginning in 2015, several individuals participated in a fraud scheme involving the use of staged automobile collisions with tractor-trailers in the

---

1 R. Doc. 384.
2 R. Docs. 368; 388.

area surrounding New Orleans, Louisiana.[3] An investigation by the FBI revealed that the individuals staged these accidents, lied to police about them, and went to personal injury attorneys who referred the passengers of the vehicles to doctors for extensive medical treatment.[4] The attorneys also filed personal injury lawsuits seeking damages based on the collisions and demanded settlement funds for the staged incidents and injuries.[5]

Adonte and Tiffany were two of the individuals involved in this scheme. Their role was to act as passengers in one of the staged car accidents and hire personal injury attorneys to file fraudulent lawsuits.[6] On November 13, 2017, Ryan Harris, one of their co-conspirators, convinced Tiffany, Adonte, and Adonte's boyfriend Dimitri Frazier to participate in a staged collision.[7] Harris drove the car, with Adonte, Tiffany, and Frazier as passengers.[8] Harris intentionally collided with a tractor-trailer owned by Whitestone Transportation LLC ("Whitestone").[9] After the impact, Harris fled the scene, and Tiffany moved into the driver's seat to give the impression that she had

3 R. Doc. 178 at 3.
4 *Id.* at 7.
5 *Id.*
6 *Id.* at 8.
7 *Id.*
8 *Id.*
9 *Id.* at 9.

been driving at the time of the collision.[10] The next day, Adonte, Tiffany, and Frazier went with Harris to a personal injury attorney's office so that the attorney could file a fraudulent personal injury lawsuit in connection with the collision.[11] Later, Tiffany, Adonte, and Frazier retained an attorney, Vanessa Motta, to file a personal injury lawsuit in federal court, seeking damages from the driver of the truck, Whitestone, and Whitestone's insurer, Canal Insurance Company ("Canal").[12]

In March 2019, just before trial on their claims, Tiffany, Adonte, and Frazier filed notices that they intended to exercise their Fifth Amendment rights in connection with a suspected criminal investigation.[13] Soon after, Tiffany, Adonte, and Frazier moved to dismiss the lawsuit, though Canal had already spent funds defending it.[14]

In August 2023, Adonte, Tiffany, Frazier, and several others were indicted in connection with the staged accident scheme.[15] Adonte and Tiffany were each charged with one count of conspiracy to commit wire fraud

---

10 *Id.*
11 *Id.*
12 *Id.*
13 *Id.* at 9–10.
14 *Id.* at 10.
15 *Id.* at 5.

in violation of 18 U.S.C. § 371.[16] On January 10, 2024, Adonte and Tiffany pled guilty.[17]

On July 15, 2026, the Court sentenced both Adonte and Tiffany to 18 months' probation but deferred its decision regarding restitution at the parties' request.[18] The Court ordered the Government to file a restitution memorandum by October 6, 2026.[19]

In its memorandum, the Government contends that Adonte and Tiffany are jointly and severally liable for the $176,422.65 in losses suffered by Canal under the Mandatory Victims Restitution Act ("MVRA"), 18 U.S.C. §§ 3663A–3664.[20] The Government provides a declaration from Canal's claims manager stating that Canal had suffered $176,422.65 in expenses to defend Tiffany's and Adonte's fraudulent claims, as well as an itemized list of those expenses.[21] Adonte and Tiffany argue that Canal's litigation costs are not recoverable restitution under the MVRA.[22]

The Court considers the memorandum and response below.

---

16 *Id.*
17 R. Docs. 89; 91.
18 R. Docs. 373; 374.
19 *Id.*
20 R. Doc. 384. This amount was also included in addenda to Adonte's and Tiffany's Pre-Sentence Reports (PSRs). R. Docs. 367; 369.
21 R. Docs. 384-1; 384-2.
22 R. Doc. 386. Though Adonte filed the memorandum in opposition, Tiffany has adopted Adonte's position as her own. R. Doc. 388.

## II. LEGAL STANDARD

The MVRA authorizes restitution "to a victim directly and proximately harmed by a defendant's offense of conviction." *United States v. Sharma*, 703 F.3d 318, 322 (5th Cir. 2012) (quoting 18 U.S.C. § 3663A(a)(1)). But "[a]n award of restitution greater than a victim's actual loss exceeds the MVRA's statutory maximum." *Sharma*, 703 F.3d at 322.

18 U.S.C. § 3664(e) provides that under the MVRA:

> Any dispute as to the proper amount or type of restitution shall be resolved by the court by the preponderance of the evidence. The burden of demonstrating the amount of the loss sustained by a victim as a result of the offense shall be on the attorney for the Government.

18. U.S.C. § 3664(e).

The Fifth Circuit has interpreted the MVRA to establish a "burden-shifting framework for loss-amount calculations." *United States v. Borino*, 123 F.4th 233, 247 (5th Cir. 2024). Under this framework, "if the government carries its burden of demonstrating the actual loss sustained by a victim by a preponderance of the evidence, the burden shifts to the defendant to show an entitlement to an offset against the amount of the actual loss." *Id.* Finally, "[i]f the defendant satisfies his burden, the government can rebut with additional evidence." *Id.*

In determining the amount of restitution, "every dollar must be supported by record evidence." *Sharma*, 703 F.3d at 323. The Court "may rely on actual-loss amounts in the PSR if the amounts have an adequate evidentiary basis and remain unrebutted by the defendant." *Borino*, 123 F.4th at 247.

## III. DISCUSSION

The Government seeks to recover the legal expenses that Canal incurred in defending the fraudulent lawsuit as restitution under the MVRA. It argues that Canal is a victim under the MVRA and that subsection (b)(1) of the MVRA entitles Canal to restitution in the amount that it spent defending the fraudulent lawsuit.[23] Subsection (b)(1) provides that:

> (b) The order of restitution shall require that such defendant–
>
> (1) in the case of an offense resulting in damage to or loss or destruction of the property of a victim of the offense–
>
> (A) return the property to the owner of the property or someone designated by the owner; or
>
> (B) if return of the property under subparagraph (A) is impossible, impractical, or inadequate, pay an amount equal to
>
> I. the greater of
>
> i. the value of the property on the date of the damage, loss, or destruction; or

23 R. Doc. 384.

ii. the value of the property on the date of sentencing, less

II. the value (as of the date the property is returned) of any part of the property that is returned.

18 U.S.C. § 3663A(b)(1).

Defendants contend that *Lagos v. United States*, 584 U.S. 577 (2018), prohibits the inclusion of these litigation expenses in the calculation of restitution under the MVRA.[24] In *Lagos*, the Supreme Court held that subsection (b)(4) of the MVRA, which provides for restitution in the amount of "other expenses incurred during participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense," did not include attorney's fees or litigation costs incurred in private investigations and civil proceedings. *Id.* at 579. The Supreme Court reasoned that this residual phrase encompassed costs incurred by victims from their participation in government investigations, not their own parallel private investigations. *Id.*

But here, the Government does not seek restitution under subsection (b)(4) of the MVRA. Rather, it seeks restitution under subsection (b)(1). Both before and after *Lagos*, courts have consistently held that litigation expenses incurred as the direct result of a defendant's fraudulent scheme are

---

24 R. Doc. 386 at 2.

included in (b)(1). *See, e.g.*, *United States v. Mikolaljczyk*, 137 F.3d 237, 246 (5th Cir. 1998) (including attorneys' fees in restitution under (b)(1) because defendant's "action of bringing a lawsuit against [victim] was part of the scheme to defraud" and victim's defense of the lawsuit was "not a voluntary action taken to recover property or damages"); *United States v. Sullivan*, 118 F.4th 170, 233 (2d Cir. 2024) ("attorneys' fees are recoverable pecuniary losses at the core of the MVRA where those expenses were accrued in the course of defendant's actual crimes against the victim"); *United States v. Corey*, 77 F. App'x 7, 11 (1st Cir. 2003) (including attorneys' fees in restitution under (b)(1) because victim's "legal expenses arose directly from [defendant's] fraud"). *Lagos* did not interpret (b)(1) and therefore did not disrupt this line of precedent. Thus, because the fraudulent lawsuit was part of Tiffany and Adonte's scheme, Canal is entitled to restitution in the amount of litigation expenses it incurred in defending that suit.

Defendants also rely on *United States v. Koutsostamatis*, 956 F.3d 301 (5th Cir. 2020). In *Koutsostamatis*, a BP employee attempted to extort BP by posing as a hacker with sensitive information from BP's network. *Id.* at 304. When BP contacted the FBI, the FBI requested that BP help to investigate the breach of its network. *Id.* BP complied, and at sentencing, the district court imposed restitution under section (b)(4) of the MVRA in

the amount that BP spent on this investigation: $552,651. *Id.* at 305. Relying on *Lagos*, the Fifth Circuit found that this expense was not recoverable under section (b)(4) of the MVRA because that section covers only government investigations, not internal investigations like BP's. *Id.* at 309.

*Koutsostamatis* is inapposite here. The Government seeks restitution under section (b)(1) of the MVRA, while *Koutsostamatis* dealt only with section (b)(4) and declined to consider whether section (b)(1) could have covered BP's expenses. *Id.* Further, here, the victim's litigation expenses were incurred during and were caused by defendants' fraudulent litigation scheme, while the investigation in *Koutsostamatis* was undertaken by BP only at the FBI's request. *Koutsostamatis* dealt with a different statutory provision applied to a different factual situation and thus does not affect the restitution analysis here.

Adonte also argues that she lacks the financial means to pay the Government's proposed restitution amount.[25] The MVRA provides that "[i]n each order of restitution, the court shall order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant." 18 U.S.C. § 3664(f)(1)(A). But courts can impose joint and several liability

---

[25] *Id.* at 3.

for restitution on co-conspirators, as the Government requests here. 18 U.S.C. § 3664(h) provides that:

> If the court finds that more than 1 defendant has contributed to the loss of a victim, the court may . . . apportion liability among the defendants to reflect the level of contribution to the victim's loss and economic circumstances of each defendant.

18 U.S.C. § 3664(h).

The Fifth Circuit has confirmed that this provision allows courts to impose joint and several liability for restitution under the MVRA on the members of a conspiracy. *See United States v. Gozes-Wagner*, 977 F.3d 323, 346 (5th Cir. 2020). Because Tiffany and Adonte conspired with Frazier, Harris, and Motta in their fraudulent scheme, the Court finds that it is proper to impose joint and several liability for restitution. Frazier, Harris, and Motta's restitution will be ordered after they are sentenced.[26]

Both Tiffany's and Adonte's PSRs state that they have no ability to pay.[27] But because the PSRs were filed over two years ago, the Court orders the Financial Litigation Unit of the United States Attorney's Office for the Eastern District of Louisiana to investigate and make a recommendation on

---

[26] Frazier's sentencing in this case is scheduled for March 24, 2027. Harris and Motta are defendants in Case No. 24-cr-105. Harris's sentencing is scheduled for December 11, 2026, and Motta's sentencing is not yet scheduled.

[27] R. Docs 178 at 15; 186 at 17.

Tiffany's and Adonte's abilities to pay. The Court will then modify this order to provide a schedule for payment of restitution "as the interests of justice require." 18 U.S.C. § 3664(k).

## IV. CONCLUSION

For the foregoing reasons, the Court orders restitution of $176,422.65 to Canal. Tiffany and Adonte are jointly and severally liable for this amount. The Court also orders that the Financial Litigation Unit of the United States Attorney's Office for the Eastern District of Louisiana investigate and make a recommendation to this Court on defendants' ability to pay restitution.

New Orleans, Louisiana, this 27th day of October, 2026.

SARAH S. VANCE
UNITED STATES DISTRICT JUDGE